# In the United States Court of Federal Claims

No. 16-1485C
(Filed: August 26, 2021)
**FOR PUBLICATION**

```
***************************************
MICHAEL VALTE, et al.,                *
                                      *
            Plaintiffs,               *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
            Defendant.                *
                                      *
***************************************
```

*William Clifton Alexander*, Anderson Alexander, PLLC, Corpus Christi, Texas, for Plaintiff. With him on briefs was *Lauren E. Braddy*, Anderson Alexander, PLLC, Corpus Christi, Texas.

*Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for Defendant, United States. With him on briefs were *Joseph H. Hunt*, Assistant Attorney General, *Jeffrey Bossert Clark*, Acting Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

Plaintiffs — former trainees in the Detection Canine Instructor Course ("DCIC") of U.S. Customs and Border Protection ("CBP") — seek overtime pay under the Customs Officer Pay Reform Act, 19 U.S.C. § 267, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Back Pay Act, 5 U.S.C. § 5596. *See* Am. Compl. ¶ 1 (ECF 11). Pursuant to FLSA's collective action provision, which allows Plaintiffs to proceed "for and in behalf of … themselves and other employees similarly situated," 29 U.S.C. § 216(b), Plaintiffs seek "conditional certification" of a collective action comprising individuals who participated in the DCIC at two locations over a period of several years.[1] Plaintiffs also request equitable tolling of the statute of

---

[1] Pls.' Mot. for Conditional Certification & Notice (ECF 18); Def.'s Resp. (ECF 19); Pls.' Reply (ECF 20); Pls.' Suppl. Filing (ECF 27); Pls.' Am. Suppl. Filing (ECF 29-1); Def.'s Suppl. Resp. (ECF 32).

limitations for trainees who wish to opt in to the lawsuit.[2] The principal question is whether Plaintiffs have justified Court-issued notice about the case to DCIC trainees who are not yet parties.

The standards for FLSA collective actions are unsettled in several respects. Courts — including this Court, in the absence of clear guidance from the Federal Circuit — have used several different methodological frameworks. Courts disagree on what it means for employees to be "similarly situated," and on the kind of evidence required to show similarity.

Nevertheless, it does not appear that the proposed collective action members are sufficiently similar for Court-issued notice to be warranted. The Motion for Conditional Certification is **DENIED** without prejudice. Plaintiffs' Motion for Equitable Tolling is **DENIED AS MOOT**. The parties are **ORDERED** to file a joint status report proposing further proceedings on or before **September 27, 2021**.

## BACKGROUND

Plaintiffs are CBP employees who completed the DCIC at one of two locations, Canine Center Front Royal ("CCFR") in Virginia and Canine Center El Paso ("CCEP") in Texas. Plaintiffs allege that the DCIC is a challenging twelve-week course that requires trainees (also called "student instructors") to memorize large amounts of information with great precision. In a nutshell, Plaintiffs seek compensation for out-of-class study time during the DCIC.

The following facts are drawn from Plaintiffs' declarations in support of their Motion for Conditional Certification.

### A. Plaintiffs' Original Declarations

Plaintiffs' motion included three declarations from Michael Valte, Michael Garay, and Joe Vela.

#### 1. *Michael Valte*

Mr. Valte has been a CBP employee since 1992. Pls.' Mot. for Conditional Certification Ex. A at 1–3 ("Valte Decl.") ¶ 2. He attended the DCIC with four other trainees at CCFR in spring 2014. *Id.* ¶ 4. The instructors "made clear" throughout the training that attendees were expected to spend a significant amount of time studying outside of class, on their own time. *Id.* ¶ 6. The DCIC provided no in-class study time, and Mr. Valte believes that he would have failed the course if he did not spend the "vast majority" of his free time studying. *Id.*

---

[2] Pls.' Mot. for Equitable Tolling (ECF 34); Def.'s Resp. (ECF 41); Pls.' Reply (ECF 44).

After in-class training, Mr. Valte "would return to [his] residence, eat dinner, and begin studying all of the course materials. On a typical weeknight, [he] would study for four (4) to five (5) hours before going to sleep." *Id.* ¶ 9. On weekends he and his classmates met in group-study sessions where they "quiz[zed] each other on the materials and work[ed] on rote recitations to prepare for the examinations … for at least six, but usually eight hours each Saturday and Sunday as a group." *Id.* He typically studied for 30 to 40 hours "off the clock" each week, time for which he was not compensated. *Id.* ¶ 10.

### 2. *Michael Garay*

Mr. Garay has been a CBP employee since 2003. Pls.' Mot. for Conditional Certification Ex. A at 4–7 ("Garay Decl.") ¶ 2. He attended the DCIC with four other students at CCFR in spring 2014 (though he does not say if he attended the same session as Mr. Valte). *Id.* ¶ 5. His descriptions of the course and his study time are near-verbatim repetitions of Mr. Valte's declaration. *Id.* ¶¶ 6–13.

Mr. Garay also declares that after completing the course himself, he was a DCIC instructor at CCEP — although he does not specify when. *Id.* ¶ 14. When he was an instructor, in-class study time was provided, and he was told to direct trainees not to study after hours. *Id.* He nonetheless believes the trainees studied after hours anyway, explaining that they "could not have passed the program" otherwise. *Id.*

### 3. *Joe Vela*

Mr. Vela has been a CBP employee since 1997. Pls.' Mot. for Conditional Certification Ex. A at 8–10 ("Vela Decl.") ¶ 2. He attended the DCIC from January to March 2014 — initially at CCEP, but then at CCFR after a transfer — and does not say if he overlapped with Mr. Valte or Mr. Garay. *Id.* ¶ 4. His descriptions of the course and his study time are, like Mr. Garay's, nearly identical to Mr. Valte's declaration. *Id.* ¶¶ 4–10. Mr. Vela states that no in-class study time was provided at either CCEP or CCFR, *id.* ¶ 6, and that he believes all his fellow trainees at both locations were spending large amounts of free time on study, *id.* ¶ 11.

## B. Supplemental Declarations

The Court permitted Plaintiffs to submit additional declarations addressing Defendant's objections to their evidence. *See* Orders (ECF 25, 31). Plaintiffs provided two more declarations from Benjamin Joseph and Jennifer Valenzuela.

### 1. *Benjamin Joseph*

Mr. Joseph attended the DCIC at CCEP from April to July 2016. Pls.' Suppl. Br. Ex. A ¶ 3 ("Joseph Decl."). He began the course with three other individuals, but was the only person to complete the course. *Id.* ¶ 4. Attendees were provided one to

two hours of study time at the end of each workday. *Id*. ¶ 6. But Mr. Joseph declares that he also studied approximately four hours each night after work, totaling between 20 and 30 hours per week. *Id*. Unlike the original declarants, he does not mention any group study sessions, but he declares that he knows from other individuals going through the program with him that "we were all devoting the vast majority of our free time to study the materials, and also spent our weekends studying." *Id*. ¶ 8.

Mr. Joseph alleges that part of his training as a canine instructor involved training canine handlers. *Id*. ¶ 7. That aspect of training required Mr. Joseph to complete "Performance Scoring Sheets" for canine handler trainees he instructed. *Id*. He typically completed performance scoring sheets in the evening. *Id*. Mr. Joseph estimates that process took between four and six hours per week, in addition to his study time. *Id*.

### 2. *Jennifer Valenzuela*

Ms. Valenzuela attended the DCIC at CCEP from April to June 2019. Pls.' Am. Suppl. Br. Ex. A ¶ 3 ("Valenzuela Decl."). When she began the course there were seven other trainees; she does not say how many completed the course. *Id*. ¶ 4. Ms. Valenzuela received no study time during working hours. *Id*. ¶ 6. She studied for a half-hour each morning, four hours per night, and "throughout" the weekend, totaling approximately 30 hours per week. *Id*. She does not mention group study. Like Mr. Joseph, Ms. Valenzuela declares that she was required to write performance evaluations for canine handler trainees, a process she says took "multiple hours" each week. *Id*. ¶ 7.

### C. Claims Common to All Declarations

All declarants aver that other individuals who went through the DCIC had the same experience. All declarations contain, with minor variations, the following paragraphs:

> My experience with the DCIC was the same as other CBP employees who have gone through the program. I know this because I spoke with the other individuals going through the DCIC program with me, and I know that we were all devoting the vast majority of our free time to study the materials, and also spent our weekends together, studying in order to pass the exams.
>
> I have also had conversations with other CBP employees who have completed the DCIC program and know that they were required to study just as much as I was to successfully pass the program. The rigor of the DCIC is a shared experience that we have in common, and it is something that I speak about when I talk to others who have completed the program.

> Based on my conversations with other CBP employees who have taken part in the DCIC training, I know that they would be interested to learn that they may recover unpaid overtime from the United States.

Valte Decl. ¶¶ 11–13; *see* Garay Decl. ¶¶ 12–13, 15; Vela Decl. ¶¶ 11–13; *see also* Joseph Decl. ¶¶ 8, 10–11 (similar language); Valenzuela Decl. ¶¶ 8, 10–11 (same as Mr. Joseph).

### D. Procedural History

Plaintiffs initially sued in the Southern District of Texas in 2016. *See* Transfer Docket (ECF 1-2). The district court transferred the case to the Court of Federal Claims three months later. *See id.* Plaintiffs filed an amended complaint a year after that. *See* Am. Compl.

Another year later — two years into this case — Plaintiffs for conditional certification. Plaintiffs propose a FLSA collective action consisting of "all persons presently or formerly employed by Defendant who attended the [DCIC] as student instructors at any time from approximately February 2014 through the present." *See* Pls.' Mot. for Conditional Certification at 5. The collective action would include attendees at both the CCEP and CCFR locations. Plaintiffs ask the Court to issue notice to certain persons within that group in order to facilitate their decision to opt in.

In the time since Plaintiffs filed the motion, the Court held two status conferences. *See* Orders (ECF 23, 24). As mentioned above, the Court permitted Plaintiffs to supplement the motion with additional evidence. Additionally, the Court ordered the parties to confer on the form of Plaintiffs' proposed notice to collective action members. The parties ultimately agreed on a proposed notice for the Court to issue if conditional certification is granted. *See* Joint Status Report (ECF 26).

Plaintiffs have also filed a motion for equitable tolling of the statute of limitations for any potential collective action members from the date of the Motion for Conditional Certification. *See* Pls.' Mot. for Equitable Tolling. While briefing on that motion was in progress, the case was reassigned to me. *See* Order (ECF 39).

## DISCUSSION

### I. Legal Standard

FLSA allows employees to sue employers collectively. Section 216(b) provides:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party

plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). A plaintiff in a collective action sues "in a representative capacity for other similarly situated employees who have consented to the representation" by opting in. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 176 (1989) (Scalia, J., dissenting). A collective action is not a class in the sense of Rule 23 of the Federal Rules of Civil Procedure; a collective action does not bind absent individuals or enable named plaintiffs to control the litigation in the manner of class-action representatives. *See, e.g.*, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). But a collective action "proceeds throughout discovery as a representative action for those who opt-in," *Morgan*, 551 F.3d at 1259, and "use of representative testimony to establish class-wide liability has long been accepted," *Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017).

Courts are split on several aspects of collective action procedure. There are at least three different frameworks for identifying and issuing notice to "similarly situated" employees who have a right to opt in. Courts do not agree on what it means to be "similarly situated" in the first place. Courts further disagree over the applicability of evidentiary rules in determining similarity, especially in a case's early stages. The Federal Circuit does not appear to have definitively resolved any of those questions.[3] The standards applicable to Plaintiffs' submissions are thus ambiguous.

### A. Methods for Managing FLSA Collective Actions

A "court has a managerial responsibility to oversee the joinder of additional parties" in FLSA collective actions. *Hoffmann-La Roche*, 493 U.S. at 170–71. FLSA, however, is silent on the exact process for doing so. Several competing methods have emerged.

### 1. *Two-Step Approach*

The most common approach to FLSA joinder proceeds in two steps. In the first step, a court may "conditionally certify" a collective action based on a "modest factual showing" that the named plaintiffs are similarly situated to a group of absent individuals. *Gayle v. United States*, 85 Fed. Cl. 72, 77 (2008) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "'[C]onditional certification' does

---

[3] The most relevant Federal Circuit decision — which applied then-applicable Second Circuit precedent — authorized discovery to identify potential collective action members, but did not endorse any procedure or standard for proceeding as a collective action. *United States v. Cook*, 795 F.2d 987, 993–94 (Fed. Cir. 1986).

not produce a class with an independent legal status[.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Rather, it is a court-created threshold for determining whether to send court-approved notice to absent individuals who appear to be similarly situated to the plaintiffs. *Id.*; *see also Hoffmann-La Roche*, 493 U.S. at 171–72. In the second step, after discovery, a defendant may move to "decertify" the collective action under a more stringent evaluation of whether its members are in fact similarly situated. *Gayle*, 85 Fed. Cl. at 77–78. When a collective action is decertified, the opt-in plaintiffs are dismissed without prejudice. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Gayle*, 85 Fed. Cl. at 78. If it is not decertified, it proceeds as a collective action.

Most circuits to consider the issue have endorsed some variant of the two-step approach, at least in *dicta*. *Myers*, 624 F.3d at 554–55; *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Morgan*, 551 F.3d at 1260; *see also Campbell*, 903 F.3d at 1110 ("[A]s a general rule, the two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record."). This Court also commonly uses the two-step approach. *See, e.g.*, *Crawley v. United States*, 145 Fed. Cl. 446, 449 (2019); *Boggs v. United States*, 139 Fed. Cl. 375, 378 (2018); *Dominick v. United States*, 135 Fed. Cl. 714, 716 (2017); *Barry v. United States*, 117 Fed. Cl. 518, 520–21 (2014); *Whalen v. United States*, 85 Fed. Cl. 380, 383 (2009); *Gayle*, 85 Fed. Cl. at 77–78; *Briggs v. United States*, 54 Fed. Cl. 205, 206 (2002).

But although the two-step approach is common, it has also been criticized. The main problem is that it is divorced from FLSA's text, which makes no mention of "certification," conditional or otherwise. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 440 (5th Cir. 2021); *McClendon v. United States*, No. 12-81C, 2013 WL 285584, at *1 (Fed. Cl. Jan. 24, 2013). As a result, reliance on class-action–style terminology of "certification" and "decertification" — widely attributed to *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), *mandamus granted on other grounds sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988) — has sometimes confused more than it illuminates. "Conditional certification," again, does not create a class; it merely triggers issuance of notice. Individuals can opt in to a FLSA collective action *without* conditional certification, as some have in this case. *See, e.g.*, Notices (ECF 28, 30, 33). It follows that "decertification" is a misnomer too, for a defendant could move to dismiss opt-in plaintiffs as not similarly situated even if there had never been a "conditional certification" order.

Even more importantly, as discussed below, courts have never come to a consistent understanding of how to decide whether a FLSA collective action should be "conditionally certified" or "decertified."[4] A judge-made procedure unmoored from the statute, in other words, has led to confusion about the terms and the doctrine.

### 2. *Incorporation of Rule 23*

Some courts, while sometimes accepting a two-step certification/decertification process in principle, have sought firmer ground by applying the standards of Rule 23 class certification in FLSA collective actions.[5] The seminal case adopting that standard required the plaintiffs "to show that they satisfy the requirements of rule 23 or convince me that a particular requirement is inconsistent with [Section 216(b)]," upon which the court would "consider the question of notice under the guidelines set forth in rules 23(c) and 23(d)[.]" *Shushan v. Univ. of Colorado at Boulder*, 132 F.R.D. 263, 268 (D. Colo. 1990); *see Swales*, 985 F.3d at 437 (crediting *Shushan* as the source of that approach); *Campbell*, 903 F.3d at 1111 (same).

The Rule 23 approach has not been widely adopted. It is difficult to square with FLSA, which refers to "similarly situated" individuals, not to numerosity, commonality, typicality, and so forth. *See* Fed. R. Civ. P. 23(a); RCFC 23(a); *Swales*, 985 F.3d at 440 ("The FLSA, and § 216(b) in particular, says nothing about … any of the requirements of Rule 23."). FLSA permits Rule 23 class actions as well, but appears to distinguish them from collective actions. *See* 29 U.S.C. § 256 (referring to "a collective or class action" under FLSA). Merging class and collective action procedures is also potentially inconsistent with the direction of the advisory committee on the Federal Rules of Civil Procedure, which stated that the 1966 amendment adopting the modern Rule 23 framework would not apply to FLSA collective actions. *See* Fed. R. Civ. P. 23, 1966 Advisory Committee Note ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as

---

[4] Courts have not even agreed on the procedure for decertification. *Compare Campbell*, 903 F.3d at 1117 (holding that when "decertification overlaps with the merits of the underlying FLSA claims, the summary judgment standard is the appropriate one"), *with Zavala*, 691 F.3d at 534 (evaluating decertification motion based on a preponderance-of-the-evidence standard). Because the United States has not filed any motion regarding the status of the opt-in Plaintiffs in this case, there is no reason to address the question.

[5] It is not clear whether reference to Rule 23 in FLSA collective actions is best characterized as an alternative to the *Lusardi* two-step approach, *see, e.g.*, *Swales*, 985 F.3d at 437, or as a way of thinking about whether individuals are similarly situated, *see Campbell*, 903 F.3d at 1111–13. Both conceptualizations are reasonable because Rule 23 concerns both the procedures for class certification (which do not permit "conditional" certification solely for purposes of notice) and the substantive requirements for a class (which are analogous in some respects to FLSA's requirement of similarity, though ultimately distinct). That is another symptom of confusion about the terms in the two-step process.

amended."); *Chase v. AIMCO Properties, L.P.*, 374 F. Supp. 2d 196, 199 (D.D.C. 2005).[6]

Nonetheless, a few courts have followed it, at least in part. *See Alvarez v. City of Chicago*, 605 F.3d 445, 449–50 (7th Cir. 2010) (addressing whether "common questions predominate" in a FLSA collective action); *Camp v. Lockheed Martin Corp.*, No. H-97-1938, 1998 WL 906915, at *2 (S.D. Tex. Apr. 23, 1998) (denying "conditional class certification … under either the two-step analysis or the *Shushan* standard"); *Wilkerson v. Martin Marietta Corp.*, 875 F. Supp. 1456, 1461 (D. Colo. 1995) (addressing, "in addition to the unitary standard of 'similarly situated' which § [2]16(b) prescribes, the relevant requirements of Rule 23"); *see also, e.g.*, *Burns v. Vill. of Wauconda*, No. 99 C 0800, 1999 WL 529574, at *3 (N.D. Ill. July 15, 1999) (concluding that "application of Rule 23 to FLSA class actions has much to commend it" but finding it "unnecessary to decide here which of the competing approaches should be employed in determining FLSA class certification" (citing *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir. 1995)), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003)).[7]

One difference between FLSA collective actions and Fed. R. Civ. P. 23 class actions — the fact that the former require members to opt in and the latter require them to opt out — matters less in this Court, where all class actions are opt-in. RCFC 23(c)(2)(B)(v). For that reason, some members of this Court have been more willing to look to Rule 23 standards in FLSA cases. *See Smith v. United States*, No. 13-161C, 2014 WL 3940494, at *2 (Fed. Cl. Aug. 11, 2014); *Delpin Aponte v. United States*, 83 Fed. Cl. 80, 92 (2008). Nonetheless, the problem remains that Rule 23 requirements do not obviously mirror the Section 216(b) "similarly situated" standard.

### 3. Fifth Circuit Approach

Earlier this year, the Fifth Circuit adopted a very different approach to FLSA collective actions. After examining the history and criticisms of the two-step process and use of Rule 23 standards, the court concluded that a better approach is necessary from the very beginning of a case. *Swales*, 985 F.3d at 439. Because "[t]he FLSA, and § 216(b) in particular, says nothing about 'conditional certification' or any of the requirements of Rule 23," the court could not "read the statute as supporting any of

---

[6] The Advisory Committee may have changed FSLA collective action procedures if it wished. Procedures in the federal Rules override inconsistent procedures in other laws, including federal statutes. 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."); *Henderson v. United States*, 517 U.S. 654, 656 (1996).

[7] In *Espenscheid v. DirectSat USA, LLC*, the Seventh Circuit said — perhaps inaccurately — that Section 216(b) and Rule 23 standards are "largely merged … though with some terminological differences." 705 F.3d 770, 772 (7th Cir. 2013).

the certification tests that district courts have created to determine whether a group of employees should receive notice about a collective action. And there is no Supreme Court case stating otherwise." *Id.* at 440.

Accordingly, the circuit directed the district court, and future courts confronted with collective action issues, to:

> [I]dentify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then … authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible.

*Id.* at 441. The Fifth Circuit's approach may bear some resemblance to decisions — including at least two from this Court — that have abandoned the misappropriated language of "certification" in favor of simply analyzing whether to issue court-approved notice to particular absent individuals. *See, e.g., Doe No. 1 v. United States*, 148 Fed. Cl. 437, 439 (2020); *McClendon*, 2013 WL 285584, at *2; *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 463 (S.D.N.Y. 2008).

### B. Defining "Similarly Situated"

Procedural questions about FLSA collective actions lead to the substantive question of who is "similarly situated" to the named plaintiffs, and thereby entitled to opt in. *See* 29 U.S.C. § 216(b). The Supreme Court has indicated that potential collective action members are similarly situated if they share "common issues of law and fact arising from the same alleged [prohibited] activity." *Hoffmann-La Roche*, 493 U.S. at 170. Beyond that statement, agreement is lacking. *Campbell*, 903 F.3d at 1111 ("There is no established definition of the FLSA's 'similarly situated' requirement, nor is there an established test for enforcing it." (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)); *Mooney,* 54 F.3d at 1213). Courts diverge on how to analyze whether individuals are similarly situated, and on how particular differences within a group affect the analysis.[8]

### 1. *The "Ad Hoc" Analysis and its Alternatives*

The most common understanding of "similarly situated" — the one most closely associated with the two-step certification procedure — is sometimes called an "ad hoc" analysis, also derived from *Lusardi*. *Thiessen,* 267 F.3d at 1103. Courts applying the

---

[8] In considering the meaning of "similarly situated," I include cases considering "decertification" of FLSA collective actions. The only coherent way to consider whether to issue notice in FLSA collective actions is to incorporate some idea of who would ultimately be entitled to opt in — to use the two-step parlance, individuals who would survive a motion to decertify. The term "similarly situated" therefore must have the same meaning at both stages, even if courts apply different evidentiary burdens.

ad hoc test consider who is similarly situated by looking to factors such as "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Id.* (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

"Ad hoc," unfortunately, is sometimes just a euphemism for "standardless." By encouraging courts to rely on an array of different factors and considerations without firmly relating them to a clear understanding of what it means to be similar, the ad hoc test operates "at such a high level of abstraction that it risks losing sight of the statute underlying it." *Campbell*, 903 F.3d at 1114; *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 517 (2d Cir. 2020). It also leads to collective actions that cannot be managed, and where trial does not lead to common answers to common questions. Allan G. King, Camille C. Ozumba, *Strange Fiction: The "Class Certification" Decision in FLSA Collective Actions*, 24 Lab. Law. 267, 301 (2009). As discussed below, the ad hoc test has led to inconsistent results on elementary questions about what it means to be "similarly situated." Those developments show that the ad hoc test has failed to serve its purpose.

Courts have explored various alternatives to the ad hoc test without reaching a consensus. Some courts consider whether members of a proposed collective action are similarly situated without clearly explaining their criteria. One option, discussed above, abandons the two-step approach in favor of Rule 23's stricter standards for individuals comprising a class. Another, more liberal, test holds that individuals are "similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117; *see also Scott*, 954 F.3d at 516. The latter line of cases treats FLSA collective actions as no more restrictive — and possibly less restrictive — than joinder under the federal rules. *See Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1306 (D. Colo. 2015); Scott A. Moss, Nantiya Ruan, *The Second-Class Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 Am. U. L. Rev. 523, 542 (2012). But while simple to administer, that alternative does not necessarily account for FLSA's text any better than an analogy to Rule 23: After all, being "similarly situated" could just as easily imply a *closer* connection between individuals than merely having a single similar common issue. *See Similar*, Black's Law Dictionary (5th Ed. 1979) ("Nearly corresponding; resembling in many respects; somewhat like; having a general likeness, although allowing for some degree of difference."). Defining the FLSA collective action that way is also at least potentially circular — *i.e.*, individuals are "similarly situated" if they are "similar" in a "material" way. *Campbell*, 903 F.3d at 1117.

Other alternatives — which, to my knowledge, modern courts have not explored — might interpret the phrase "similarly situated" based on how the term was understood when FLSA was enacted in 1938. Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201–219); *see Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020). By the time FLSA became law, courts had used that phrase for decades in the context of equal protection, *see Barbier v. Connolly*, 113 U.S. 27, 32 (1884); *Yick Wo v. Hopkins*, 118 U.S. 356, 368 (1886), and pre-Rules precursors to modern class actions, such as federal suits in equity, *see Carpenter v. Knollwood Cemetery*, 198 F. 297, 298 (D. Mass. 1912). Some early FLSA cases analogized the collective action to so-called "spurious" class actions, *Pentland v. Dravo Corp.*, 152 F.2d 851, 852–53 (3d Cir. 1945), a device for permissive joinder under the 1938 version of Rule 23. *See* Moss, *supra*, at 545–47; Wright & Miller 7A Fed. Prac. & Proc. Civ. § 1752, Class Actions Under Original Rule 23 (3d ed.). Although the issue has received some scholarly attention, courts have not taken the opportunity to consider whether such historical sources provide a body of law explaining what it means to be "similarly situated." *See Lusardi*, 855 F.2d at 1074 ("[I]t would be wrong to freeze a device as important to the vindication of civil rights as [FLSA collective actions] into the mold of ancient law[.]"). Yet another answer, requiring no historical analysis, might be to treat individuals as "similarly situated" when doing so would generate the kinds of efficiencies FLSA collective actions are intended to create. *See Hoffman-La Roche*, 493 U.S. at 170. There are likely still more potential analytical approaches rooted in the text. In this case, however, the parties appear to assume that an ad hoc analysis is appropriate. Development of superior alternatives will wait for another day.

### 2. *Necessity of a Common or Unified Policy*

One example of confusion about what it means to be "similarly situated" is a split of authority (including among courts using an ad hoc standard) over whether all members of a FLSA collective action need to have been subject to a single employment policy.

Some courts do appear to require a common policy. *Mooney*, 54 F.3d at 1214 n.8 ("At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'" (quoting *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988))); *Zavala*, 691 F.3d at 538 ("[Being similarly situated] means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."); *Myers*, 624 F.3d at 555 (explaining that notice is appropriate based on a "modest factual showing that [plaintiff] and potential opt-in plaintiffs together were victims of a common policy or

plan that violated the law" (quotes omitted)); *Thiessen*, 267 F.3d at 1102 ("[A] court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan[.]" (quotes omitted)); *see also* 7 Newberg on Class Actions § 23:39 (5th ed.) ("Generally, the plaintiffs must demonstrate that they have all been 'subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.'") (collecting cases at n.7). Conversely, courts have concluded that a FLSA collective action cannot include individuals who were subject to *different* employment policies. *See, e.g., Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302 (11th Cir. 2008) (affirming decertification based on finding that no common policy existed); *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 654–55 (S.D. Tex. 2010) ("The October 2008 policy change demonstrates that those employed by Defendant after October 2008 are not 'similarly situated' to those employed before that time, as they are not together 'victims of a single decision, policy, or plan,' regardless of whether FLSA violations continued to occur after that time." (quoting *Mooney*, 54 F.3d at 1214 n.8)).

Yet other courts — even in jurisdictions that have also required common policies — have explicitly *rejected* a common-policy requirement. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) ("We also hold that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)[.]"); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("Showing a 'unified policy' of violations is not required[.]"), *abrogated by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Courts applying this standard proceed with FLSA collective actions despite differences in employer policies. *See, e.g., Sheppard v. Hillsborough Cty. Sheriff's Off.*, No. 8:11-CV-2043-T-27TGW, 2012 WL 13141268, at *2 (M.D. Fla. July 17, 2012).

### 3. Necessity of Evidence Concerning Different Time Periods

Another area of disagreement concerns whether a court can extrapolate from evidence about alleged FLSA violations at one time and place to other times and places. Here, Plaintiffs propose a collective action covering more than seven years of DCIC sessions at two locations, starting in 2014. Pls.' Mot. for Conditional Certification at 5. But Plaintiffs originally proposed notice to individuals who attended starting in 2015. Pls.' Mot. for Conditional Certification Ex. B (proposed notice) (ECF 18-2). Only two of Plaintiffs' declarants aver personal knowledge of that time period — the others only describe 2014 — and those two were both at the same location. Joseph Decl. ¶ 3; Valenzuela Decl. ¶ 3. What inferences can I draw from those declarations?

Cases, again, do not provide a consistent answer. Some courts limit collective actions to time periods within a plaintiff's personal knowledge, and therefore close them at the time the named plaintiff leaves his employment. *See, e.g., Roberts v. S.B. S. Welding, L.L.C.*, 140 F. Supp. 3d 601, 609 (N.D. Tex. 2015) ("[W]ithout personal knowledge of Defendants' compensation policies after he left, Roberts cannot claim to be similarly situated to any individuals who did not work for Defendants during the time that Roberts did.") (internal citations omitted). Other courts have allowed broader collective actions based on evidence from a limited time period. This Court has approved of a collective action supported by a declarant who left her employment two years before the certification motion. *Gayle*, 85 Fed. Cl. at 78; *see* Mot. to Conditionally Certify Collective Action, Exh. 2, *Gayle v. United States*, 85 Fed. Cl. 72 (2008) (No. 08-18) (ECF 16-2). And some courts have allowed collective actions to continue expanding past the certification date. *See Abadeer v. Tyson Foods*, Inc., No. 3:09-CV-00125, 2014 WL 129318, at *5 (M.D. Tenn. Jan. 13, 2014).

### C. Plaintiff's Evidentiary Burden

Yet another area of ambiguity relevant to Plaintiffs' motion is in the type of evidence necessary to justify notice to absent individuals. Some of Plaintiffs' declarations rely on hearsay, *see, e.g.*, Valte Decl. ¶¶ 11–12 (noting that he had discussed the DCIC with other employees);[9] Defendant argues that hearsay should be disregarded. *See* Def.'s Resp. to Mot. for Conditional Certification at 8. Courts disagree on the answer.

At one extreme, some courts will only issue notice based on affidavits containing admissible evidence, much as would be required at summary judgment. *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865–66 (S.D. Ohio 2005) ("[O]nly admissible evidence may be considered in connection with a § 216(b) motion." (citing *Richards v. Comput. Sciences Corp.*, No. 3-03-CV-00630(DJS), 2004 WL 2211691 at *1 (D. Conn. Sept. 28, 2004); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2004 WL 1675925 at *10 (D. Or. July 27, 2004))); *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-CV-01637-MSK-MJW, 2014 WL 3408771, at *3 (D. Colo. July 14, 2014) (giving "no weight to [plaintiff's] hearsay assertions about statements made to him by other employees"); *Campagnoli v. Balans Brickell, LLC*, No. 13-CV-22638-UU, 2013 WL 12064873, at *2 (S.D. Fla. Dec. 5, 2013) ("The only evidence Plaintiffs proffer are declarations in which they state that similarly situated employees exist, and that some wish to join in suit. But Plaintiffs' testimony as to

---

[9] *See also* Garay Decl. ¶¶ 12–13 (identical language); Vela Decl. ¶¶ 11–12 (identical language); Joseph Decl. ¶¶ 8, 10 (near identical language); Valenzuela Decl. ¶¶ 8, 10 (near identical language).

others' desire to opt in is based on conversations with those employees, and therefore constitutes inadmissible hearsay which may not be considered.").

At the other extreme, some courts might not require any evidence at all before issuing notice, and instead rely on the pleadings alone. *See Neagley v. Atascosa Cty. EMS*, No. CIV.A.SA04CA0893XR, 2005 WL 354085, at *3 (W.D. Tex. Jan. 7, 2005); *see also Campbell*, 903 F.3d at 1109 ("At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence."); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (citing *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996) (itself citing *Allen v. Marshall Field & Co.,* 93 F.R.D. 438, 442–45 (N.D. Ill. 1982))). This Court — although I am not bound by its prior decisions — has rejected an evidence-free pleadings-based standard, and instead "generally require[s] plaintiffs to support the allegations with affidavits and other available evidence." *See Dominick*, 135 Fed. Cl. at 717 (collecting cases).

There is also a middle ground of courts that do not hold plaintiffs to the full requirements of the Federal Rules of Evidence, but require affidavits based on personal knowledge. *See, e.g., White*, 236 F.R.D. at 369 ("[A]ffidavits submitted at the notice stage must be based on the personal knowledge of the affiant."); *see also Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013) ("Although the Court does not require Plaintiffs to present evidence that would meet *all* of the requirements of Rule 56(e), the Declarations must be based on personal knowledge."); *Lewis v. Nevada Prop. 1, LLC*, No. 2:12-CV-01564-MMD, 2013 WL 237098, at *8 (D. Nev. Jan. 22, 2013) ("[A] plaintiff does not meet her burden through unsupported assertions of widespread violations. Affidavits in support of a motion for conditional certification must be based on the affiant's personal knowledge, which may be inferred based on what the affiant would have probably learned during the normal course of employment.") (internal citations omitted); *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 95 (S.D.N.Y. 2020) ("Plaintiffs do not have personal knowledge of Defendants' pay policies as to the waiters and kitchen staff that they claim are similarly situated to them.").

### D. Resolution of Legal Issues

The two-step certification process, although widespread, does not capture the real statutory requirements of FLSA collective actions. What courts have sometimes called "conditional certification" is in reality a case-management device. FLSA collective actions offer certain gains in efficiency for litigants and courts, and courts have "procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands

or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche*, 493 U.S. at 170. Court-issued notice is no more than a way of doing that.

Importing Rule 23 concepts — like "certification" of a "class" — into the notice process distracts from the real purposes of notice, *e.g.*, timely opt-in by people entitled to proceed collectively, maintenance of orderly case deadlines, and supervision of communications about the case with potentially interested non-parties. *Id.* at 171–72; *see also Briggs*, 54 Fed. Cl. at 206–07. The Rule 23 analogy is also a misleading way of describing what a motion like Plaintiffs' needs to show. The question is less whether anyone is entitled to send or receive notice, but whether a court should exercise its discretion to issue notice in a particular form, to particular people, at a particular time. *See Hoffman-La Roche*, 493 U.S. at 172–73 (citing Fed. R. Civ. P. 83 & 16); RCFC 83(b) & 16(b). In other words, it is more accurate to treat motions like this one simply as requests for authorization of notice. *Doe No. 1*, 148 Fed. Cl. at 439; *McClendon*, 2013 WL 285584, at *2; *Amendola*, 558 F. Supp. 2d at 463.

Viewing the notice process in those terms, rather than through the lens of "conditional certification," clarifies the whole enterprise. Whether to issue notice depends on delineating who is likely to be "similarly situated" to the named Plaintiffs, and therefore entitled to opt in to a FLSA collective action. When a similarly situated group exists, early notice is likely to be consistent with FLSA and good case management practices — subject of course to the Court's discretion. *See* RCFC 83(b) & 16(b). Conversely, sending notice to people who are unlikely to be similarly situated would not serve the purposes of a FLSA collective action and would achieve no efficiencies; it would be nothing more than "solicitation of claims," which *Hoffman-La Roche* specifically forbids. 493 U.S. at 174. Standards for who is "similarly situated" require additional theoretical development, for the reasons described above, though most differences in authority (including about the ad hoc test and its alternatives) need not be resolved for present purposes.

As for the evidentiary burden, I shall follow the practice of this Court in rejecting the notion that evidence is entirely unnecessary for issuing notice in FLSA collective actions. The Supreme Court has warned that notice procedures are vulnerable to abuse, *id.* at 171, and that FLSA should not be a vehicle for "solicitation of claims," *id.* at 174. Sending notice without evidence, based on the pleadings alone, carries those risks. As for whether to require admissible evidence or simply personal knowledge, there is no need to resolve the issue here.

## II.  <u>Analysis</u>

Plaintiff has moved for "conditional certification" of a FLSA "class," and the parties assume that the two-step "certification" process applies. That framing is

understandable, given the weight of authority, though I will construe the motion as a request for authorization of notice to individuals who may be similarly situated to Plaintiffs. *Doe No. 1*, 148 Fed. Cl. at 439; *McClendon*, 2013 WL 285584, at *2; *Amendola*, 558 F. Supp. 2d at 463. For the Court to issue notice, Plaintiffs must show they are similarly situated to the people who would receive notice. Whatever it might mean to be "similarly situated" in theory, Plaintiffs have not provided enough information to make that showing. I will therefore deny the motion without prejudice.

One problem is that Plaintiffs' declarants are outside the group of individuals who would receive notice. Plaintiffs' original three declarations primarily address CCFR in 2014. *See* Valte Decl. ¶ 4; Garay Decl. ¶ 5; *id.* ¶ 14 (describing work, at an unknown time, as an instructor at CCEP); Vela Decl. ¶ 4 (starting at CCEP before transferring). Plaintiffs speak of a collective action including 2014 DCIC participants, Pls.' Mot. for Conditional Certification at 5, but their proposed notice would not go to individuals who attended the course any earlier than 2015, and possibly no earlier than three years before a decision authorizing notice, *id.* at 8; Joint Status Report at 3 (ECF 26) (revised proposed notice). Plaintiffs' supplemental declarations address a later time period, but only at CCEP, not CCFR. Joseph Decl. ¶ 3 (CCEP in April 2016); Valenzuela Decl. ¶ 3 (CCEP in April 2019). The proposed notice recipients are thus unlike the declarants, and vice versa.

Perhaps I could still find similarity if Plaintiffs' declarants were consistent. I might, for example, assume that if the declarants all had the same experience, others did too. But Plaintiffs' declarations reveal differences in how the DCIC was conducted at different places and times. The CCFR declarants had to do all of their studying outside of class when they attended in 2014. Valte Decl. ¶ 6; Garay Decl. ¶ 7; Vela Decl. ¶ 6. At CCEP, however, study time was provided in 2016, Joseph Decl. ¶ 6, then denied in 2019, Valenzuela Decl. ¶ 6. This distinction divides the declarants into at least two groups: One completed a course that gave them no study time, the other completed a course that gave them five to ten hours of paid study time per week. To complicate matters further, some declarants were told they would have to study outside of class. Valte Decl. ¶ 6; Garay Decl. ¶ 7; Vela Decl. ¶ 6. But Mr. Garay, when he was an instructor at CCEP, "was told by [his] superiors to instruct the students *not* to study after hours[.]" Garay Decl. ¶ 14 (emphasis added).

Moreover, because Plaintiffs have not provided any evidence about CCFR during the post-2015 notice period, the motion asks me to assume that the DCIC at CCEP since 2015 has been consistent with the DCIC at CCFR during that period. While courts disagree on many aspects of FLSA collective actions, they generally do not infer that individuals at one location are similarly situated to individuals elsewhere without specific evidence of consistency. *See Crawley*, 145 Fed. Cl. at 451;

*Gayle*, 85 Fed. Cl. at 78; *see also Lay v. Gold's Gym Int'l, Inc.*, No. SA-12-CV-754-DAE, 2013 WL 5595956, at *4–5 (W.D. Tex. Oct. 4, 2013) (allowing plaintiffs who produced evidence across a region to certify a regional, but not a national, collective action); *Belcher*, 927 F. Supp. at 252 (permitting notice to employees within one restaurant chain, but not to employees of other restaurants with the same corporate parent). Here the evidence does not suggest consistency, but in fact the opposite.

Plaintiffs, in short, move for notice based on evidence that does not cover both locations during the requested period of notice, and which discloses at least two policy changes at one location. They also ask the Court to treat individuals who were told they *had* to study outside of class as similarly situated to individuals who were told *not* to study outside of class. On that evidence, I cannot even find that Plaintiffs and other individuals are likely to "share a similar issue of law or fact." *Campbell*, 903 F.3d at 1117. Whatever the limits might be of the "similarly situated" standard, I decline to follow Plaintiffs' lead — at least without more evidence.

Plaintiffs try to bridge these gaps with rote language in each declaration averring that all DCIC participants have the same experience:

> My experience with the DCIC was the same as other CBP employees who have gone through the program. I know this because I spoke with the other individuals going through the DCIC program with me … I have also had conversations with other CBP employees who have completed the DCIC program and know that they were required to study just as much as I was to successfully pass the program.

Valte Decl. ¶¶ 11–12; Garay Decl. ¶¶ 12–13; Vela Decl. ¶¶ 11–12); *see also* Joseph Decl. ¶¶ 8, 10; Valenzuela Decl. ¶¶ 8, 10. Those statements are of course hearsay. Even more importantly, the declarants appear to be relaying conversations with people who went through the DCIC at other times and places. Assertions about DCIC courses the declarants did not attend are not only hearsay, but hearsay without personal knowledge. Few courts, if any, would accept such thin representations as support for FLSA notice.

Besides the lack of personal knowledge, those aspects of the declarations lack specificity. Declarations "offer[ing] no specific support for the allegations of a violation (*e.g.*, names, dates, places, types of unlawful action, etc.)" are insufficient to justify FLSA notice. *See Briggs*, 54 Fed. Cl. 207. Other courts have denied conditional certification in similar circumstances, when plaintiffs only provided five "virtually identical" affidavits which "contain[ed] primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge." *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008). There, as here, "affidavits contain[ed] nothing to establish that the plaintiffs have personal

knowledge of those matters as they pertain to" other employees. *Id.*; *see also Qing Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322 SJ MDG, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) (explaining that plaintiffs there failed "to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations about not receiving minimum wage or overtime compensation" or "identify the job titles or duties performed by their fellow employees" or "specify to which location their observations pertained," where plaintiffs worked at multiple locations). Besides, the declarants' boilerplate assertions about the consistency of the DCIC experience are contradicted — or at least drained of all meaning — by other parts of the declarations showing that DCIC participants *do* have different experiences.

Because the evidence does not show that Plaintiffs are similarly situated to the individuals who would receive notice under Plaintiffs' proposal, it does not appear that notice to those individuals would advance the case. I therefore decline to order issuance of notice. None of this is to preclude notice to absent individuals if Plaintiffs bring adequate evidence to show that such individuals are likely to be similarly situated. Any further briefing should take into account the legal issues resolved (and left unresolved) by this Order. By the same token, I express no position on whether any individuals who opt in to the case should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification is **DENIED** without prejudice. Plaintiffs' Motion for Equitable Tolling is **DENIED AS MOOT**. Discovery is now scheduled to conclude 90 days after resolution of this motion. *See* Order (ECF 22). The parties shall submit a joint status report no later than **September 27, 2021** proposing any further measures that may be necessary in light of this ruling.

**IT IS SO ORDERED.**

                                            s/ Stephen S. Schwartz
                                            STEPHEN S. SCHWARTZ
                                            Judge